BEFORE THE
UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STATES STEEL CORPORATION,<br><br>    *Plaintiff*,<br><br>    v.<br><br>UNITED STATES,<br><br>    *Defendant*. | Court No. 21-00528 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff, United States Steel Corporation ("Plaintiff" or "U. S. Steel"), by and through its attorneys, alleges herein as follows.

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. U. S. Steel contests certain aspects of the final results of the third administrative review of the antidumping duty order covering Certain Hot-Rolled Steel Flat Products from Australia, issued by the U.S. Department of Commerce ("Commerce") that were published in the *Federal Register* on August 23, 2021.  *See Certain Hot-Rolled Steel Flat Products from Australia: Final Results of Antidumping Duty Administrative Review and Final Rescission of Review, in Part; 2018-2019*, 86 Fed. Reg. 47,054 (Aug. 23, 2021) ("*Final Results*").

### JURISDICTION

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1581(c) because this action is commenced under 19 U.S.C. § 1516a(a)(2)(B)(iii).

## TIMELINESS OF ACTION

3.  U. S. Steel commenced this action by timely filing a Summons with this Court on September 20, 2021, which is considered to be within 30 days after the August 23, 2021 publication of the *Final Results*, in accordance with United States Court of International Trade Rule 3(a)(2). This complaint is being filed simultaneous with the Summons, and therefore is timely in accordance with 28 U.S.C. § 2636(c) and within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A) and United States Court of International Trade Rule 3(a)(2).

## STANDING

4.  U. S. Steel is a domestic producer of hot-rolled steel flat products, which is the domestic like product to the subject merchandise. U. S. Steel participated in the contested antidumping administrative review by filing comments and case and rebuttal briefs as U. S. Steel was one of the petitioners in Commerce's underlying antidumping duty investigation. Accordingly, U. S. Steel is an interested party within the meaning of 19 U.S.C. § 1677(9)(C) and has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d) because it participated in the challenged proceeding.

## PROCEDURAL HISTORY

5.  As a result of affirmative findings of dumping that caused material injury to the domestic industry producing hot-rolled steel flat-products, Commerce published an antidumping duty order covering hot-rolled steel flat-products from Australia in the *Federal Register* on October 3, 2016.  *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Oct. 3, 2016).

6. On January 17, 2020, Commerce initiated its third administrative review of the antidumping duty order. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 3,014 (Jan. 17, 2020) ("Notice of Initiation"). The period of review spanned from October 1, 2018 through September 30, 2019. *See id*. Commerce's administrative review covered one producer/exporter of subject merchandise BlueScope Steel (AIS) Pty Ltd, BlueScope Steel Ltd., and BlueScope Steel Distribution Pty Ltd. (collectively, "BlueScope") as the mandatory respondent in the review. *See Certain Hot-Rolled Steel Flat Products from Australia: Preliminary Results of Antidumping Duty Administrative Review and Intent to Rescind Review, In Part; 2018-2019*, 86 Fed. Reg. 10,923 (Feb. 23, 2021) ("*Preliminary Results*").

7. On March 3, 2020, BlueScope filed its response to Commerce's initial section A questionnaire. *See* Letter from BlueScope to Commerce, *Blue Scope Steel's Section A Questionnaire Response*, dated March 3, 2020. In its response, BlueScope reported that all U.S. sales were made through a single channel of back-to-back transactions between its affiliated parties: (1) Australian producer and exporter, BlueScope Steel (AIS) Pty Ltd. ("AIS"); (2) U.S. importer, BlueScope Steel Americas LLC ("BSA"); and end customer, Steelscape LLC ("Steelscape"). *Id*. at 16-17. The transaction involves "BlueScope issu{ing} an invoice to BSA for the merchandise according to the amount shipped and the formula price." *Id*. at 24.

8. On April 6, 2020, BlueScope filed its response to Commerce's initial section E questionnaire. *See* Letter from BlueScope to Commerce, *Blue Scope Steel Ltd.'s Response to Section E of the Department's Antidumping Questionnaire*, dated April 6, 2020. BlueScope's section E database included the following fields: PRODQTY, RAWMAT, FURMAT, FURLAB, FORFOH, FURCOM, FURGNA, FURINT, TOTFMG, TOTFURGNA,

TOTFURINT, TOTCOST.  *Id*. at Exhibit E-1.  BlueScope also reported that it consumed both subject and non-subject merchandise in the further manufacturing process.  *See id*. at 7.

        9.        On June 22, 2020, Commerce issued BlueScope a supplemental Section A questionnaire.  Among other questions, Commerce requested BlueScope demonstrate its internal transfer price formula.  Commerce also asked BlueScope to define certain terms used on the purchase order issued to Steelscape.  *See* Letter from Commerce to BlueScope, *Supplemental Section A Questionnaire*, dated June 22, 2020 at Questions 7 & 10.a.  BlueScope filed its response to Commerce's supplemental section A on July 10, 2020.  *See* Letter from BlueScope to Commerce, *BlueScope Steel Ltd.'s Response to the Department's Supplementary Section A Questionnaire*, dated July 10, 2020.  On September 9, 2020, U. S. Steel filed deficiency comments requesting that Commerce ask BlueScope to clarify certain aspects of its internal transfer price formula as depicted in its calculation worksheet and to provide additional information concerning its "internal company designation" of "Australian Steel Products ('ASP')."  *See* Letter from U. S. Steel to Commerce, *Comments on BlueScope's Supplemental Section A Questionnaire Response*, dated September 9, 2020.

        10.       On December 3, 2020 Commerce issued BlueScope a second supplemental Section A questionnaire.  Among other questions, Commerce requested BlueScope provide additional documentation related to its transfer price transaction.  Commerce also requested BlueScope provide further information on its "ASP designation."  *See* Letter from Commerce to BlueScope, *Supplemental A-C Questionnaire*, dated Dec. 3, 2020 at Questions 2 & 5.  BlueScope filed its response to Commerce's second supplemental section A on December 17, 2020.  *See* Letter from BlueScope to Commerce, *BlueScope Steel Ltd.'s Partial Response to the Department's Supplementary A-C Questionnaire*, dated Dec. 17, 2020.

11. In its Pre-Preliminary Comments, U. S. Steel explained that BlueScope's transfer pricing formula as compared with the transfer price invoiced to its importer and associated documents revealed reimbursement as between BlueScope's foreign producer AIS and its importer BSA. *See U. S. Steel's Pre-Preliminary Comments Concerning BlueScope*, dated Jan. 25, 2021 at 2-13. As such, U. S. Steel requested that Commerce adjust BlueScope's entered value to account for the reimbursement thereby eliminating the effect of reimbursement on U.S. price in its calculation. *Id*.

12. Commerce issued an additional supplemental questionnaire to BlueScope following U. S. Steel's pre-preliminary comments seeking further information on the pricing formula used by BlueScope to price its hot-rolled coil sold to BSA and subsequently to Steelscape. Letter from Commerce to BlueScope, *Supplemental A-E Questionnaire*, dated Feb. 4, 2021 at Questions 1 & 2. On February 9, 2021, BlueScope submitted its response. *See* Letter from BlueScope to Commerce, *BlueScope Steel Ltd.'s Response to the Department's 2nd Supplementary Sections A-E Questionnaire*, dated Feb. 9, 2021.

13. Despite U. S. Steel's identification of BlueScope's reimbursement scheme, Commerce declined to find reimbursement in its February 23, 2021 *Preliminary Results*. *See Preliminary Results*, Preliminary Decision Memorandum at 10 ("PDM"). Commerce dismissed U. S. Steel's argument stating, "Based on our preliminary analysis, we find that the record does not demonstrate that BlueScope reimbursed its U.S. affiliate." *Id*. at 10. Commerce based its conclusion on its finding that "there is no information on the record that demonstrates a payment from BlueScope to BSA for antidumping duties, nor does the pricing and sales process support the notion that BlueScope reimbursed its affiliate. At the same time, there is documentation on the record that shows that BSA paid antidumping duties." Commerce Memorandum to the File,

*Preliminary Results Analysis Memorandum for BlueScope Steel (AIS) Pty Ltd, BlueScope Steel Limited, and BlueScope Distribution*, dated Feb. 16, 2021 at 4.

14. In its administrative case brief, U. S. Steel explained that BlueScope's reimbursement of antidumping duties did not take the form of a direct payment to BSA as Commerce appeared to require in the *Preliminary Results*, but rather that AIS reimburses BSA by lowering the price charged to BSA for the internally-transferred hot-rolled steel coil in the amount of the antidumping duties that BSA owed to the United States Treasury on each entry of subject merchandise. *See Petitioners' Case Brief*, dated March 25, 2021 at 6-16. Using record documentation submitted by BlueScope in its questionnaire response and the supplements thereto, Petitioners detailed the manner in which reimbursement occurs — rather than invoicing BSA the full price of the hot-rolled coil, AIS lowered the invoice price to BSA an amount for the antidumping duties otherwise due. *See id*.

15. U. S. Steel also raised the issue of apportioning profit rate between further manufacturing and the subject merchandise in its administrative case brief. *See id*. at 17-21. U. S. Steel explained that failure to apportion profit as between the profit on the downstream sale attributable to the raw material (the hot-rolled steel) and the profit on the further manufacturing expenses would result in all of the profit from the downstream sale being included in the net U.S. price of the subject merchandise. To avoid further manufacturing profit attributable to non-subject merchandise being improperly attributed to subject merchandise, Petitioners provided a ratio calculation to ensure Commerce properly deducts the profit attributable to the U.S. "value added" from the gross U.S. price of the further manufactured hot rolled steel, leaving intact the further manufactured hot rolled steel profit attributable to sales of downstream further manufactured product. *See id*. at 21.

16.     In the *Final Results*, Commerce concluded, against the weight of the evidence, that BlueScope did not reimburse its U.S. affiliated importer, BSA for antidumping duties. Commerce reasoned that:

> BSA was not reimbursed for any payment of duties based on BlueScope's pricing methodology in which AIS calculates BSA's transfer price by, among other things, deducting an amount for estimated antidumping duties from the price calculated for its ultimate affiliated purchaser, Steelscape. As a practical matter, the fact that AIS lowered its transfer price to BSA by the amount of estimated antidumping duties offers no relief to BSA because the lowered transfer price will be accurately reflected in AIS's dumping margin. Commerce additionally, found that BSA paid cash deposits for antidumping duties upon entry, a fact uncontested by the petitioners.

*Final Results*, Issues and Decision Memorandum at 9 ("IDM"). As a result, Commerce did not adjust its CEP calculation to remediate the effect of reimbursement. Commerce's determination displays a lack of understanding of its own antidumping margin calculation. Commerce's determination also undermines the efficacy of the antidumping duty order and its associated cash deposits.

17.     Commerce failed to apportion profit as between further manufacturing activities and the subject merchandise. Instead reasoning that:

> The petitioners assert that Commerce should use entered value to apportion profit between the value of the subject merchandise and the "value added" in the United States to comport with Commerce's actions in DRAMs from Korea. To the extent that the statute governing CEP addresses value-added in the United States, it is to provide an alternative methodology to arrive at a comparable U.S. price. As demonstrated above, the appropriate amount of profit attributable to further manufacturing activities has already been deducted from CEP.

*Final Results*, IDM at 12. Commerce once again misunderstands how its margin calculation program is supposed to work. Commerce's determination also presumes that further

7

manufacturing costs are somehow accounted for in CEP deductions. But this interpretation of the margin program is inconsistent with the statute.

18. Commerce calculated an antidumping duty margin for BlueScope of 9.94 percent. *See Final Results*, 86 Fed. Reg. at 47,054.

19. U. S. Steel appeals Commerce's *Final Results* of the third administrative review.

## **CLAIMS**

### Count 1

20. Paragraphs 1 through 19 of this Complaint are incorporated herein by reference.

21. In supporting its decisions with substantial evidence as required, 19 U.S.C. § 1516a(b)(1)(B)(i), Commerce is under an obligation to address the relevant arguments of the parties. *See* 19 U.S.C. § 1677f(i)(3). U. S. Steel identified BlueScope's reimbursement scheme in the sales price between AIS (BlueScope's foreign producer) and BSA (BlueScope's U.S. importer). U. S. Steel asserted reimbursement in the form of the reduction of the invoice price from AIS to BSA by the amount of the antidumping duty otherwise due. This scheme effectively shifted the burden of paying the duty from BSA onto AIS.

22. Insofar as Commerce only meaningfully addressed whether BSA paid import duties upon importation and whether Steelscape was invoiced for those duties, *see Final Results*, IDM at 9, Commerce failed to consider relevant record evidence, address the specific transaction constituting reimbursement, and meaningfully respond to Petitioners' arguments. By not engaging with the record and U. S. Steel's arguments that reimbursement of antidumping duties occurred when AIS lowered its transfer price to BSA by the amount of the duty, Commerce failed to support its conclusion with substantial evidence. Commerce failed to consider record

evidence that reasonably detracts from its conclusion and failed to provide a reasoned explanation that reimbursement was not occurring between AIS and BSA.

Count 2

23. Paragraphs 1 through 22 of this Complaint are incorporated herein by reference.

24. Commerce's rules provide for it to "deduct the amount of any antidumping duty or countervailing duty which the exporter or producer: paid directly on behalf of the importer; or reimbursed by the importer." 19 C.F.R. § 351.402(f). The record of the underlying review reveals that the producer (AIS) relieved the importer (BSA) of its obligation to pay antidumping duties in addition to the U.S. transfer price by preemptively discounting the price charged to BSA. In doing so, AIS incurred the duty payment as opposed to BSA. Commerce's rules require Commerce to make an adjustment to U.S. price to eliminate the impact of such reimbursement. Insofar as Commerce declined to find reimbursement and failed to adjust its calculation accordingly, its decision is not in accordance with the law.

Count 3

25. Paragraphs 1 through 24 of this Complaint are incorporated herein by reference.

26. In supporting its decisions with substantial evidence as required, 19 U.S.C. § 1516a(b)(1)(B)(i), Commerce is under an obligation to address the relevant arguments of the parties. *See* 19 U.S.C. § 1677f(i)(3). U. S. Steel argued for Commerce to calculate a further manufacturing profit rate as is required under the statute.

27. Insofar as Commerce simply relied on the definition of CEP profit being "an amount of profit allocable to U.S. selling expenses including further manufacturing activities is divided by total expenses and multiplied by profit" *Final Results*, IDM at 11, Commerce failed to support its conclusion with substantial evidence. Commerce failed to consider how

BlueScope's use of non-subject merchandise in the further manufacturing processes distorts the net U.S. price unless the profit realized on sales of the downstream merchandise is apportioned to the subject merchandise and the further manufacturing activity. Insofar as Commerce included an amount of profit attributable to non-subject merchandise and further manufacturing activity in the margin calculation, Commerce failed to support its *Final Results* with substantial evidence.

Count 4

28.     Paragraphs 1 through 27 of this Complaint are incorporated herein by reference.

29.     The Statement of Administrative Action ("SAA") accompanying the Uruguay Round Agreements Act explains that when calculating constructed export price for further manufactured merchandise, "the profit to be deducted from the starting price in the U.S. market is that proportion of the total profit equal to the proportion which the U.S. manufacturing and selling expenses constitute of the total manufacturing and selling expenses." Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. No. 103-316, vol. 1, at 825–26 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4165. The SAA is an "authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act." 19 U.S.C. § 3512(d). As the SAA contemplates apportioning profit rate between further manufacturing and the subject merchandise, Commerce followed this direction in *DRAMs from Korea* where Commerce calculated a proportional amount of profit or loss attributable to the value added. *See Dynamic Random Access Memory Semiconductors of One Megabit or Above from the Republic of Korea; Final Results of Antidumping Duty Administrative Review*, 61 Fed. Reg. 20,216, 20,216 (May 6, 1996). Commerce failed to follow

this methodology by apportioning BlueScope's profit rate between further manufacturing and the subject merchandise. Therefore, Commerce acted contrary to law.

30. Commerce reasoned that it did not need to follow the SAA or *DRAMs from Korea* because it claimed that the constructed export profit provision addressed this profit issue. Insofar as the adjustment to constructed export prices for further manufacturing is required by 19 U.S.C. § 1677a(e) and the adjustment to constructed export prices for profit earned is required by 19 U.S.C. § 1677a(d)(3), Commerce acted unlawfully by not making the separate adjustments.

## REQUEST FOR JUDGEMENT AND RELIEF

WHEREFORE, U. S. Steel respectfully request that this Court:

31. Hold that the portions of Commerce's *Final Results* that are complained of above are not supported by substantial evidence and are otherwise not in accordance with law;

32. Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

33. Grant such further relief as this Court deems just and proper.

Dated:  September 20, 2021

Respectfully submitted,

/s/ Thomas M. Beline

Thomas M. Beline
Yohai Baisburd
Sarah E. Shulman
**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006
Phone:  (202) 567-2300
Fax:  (202) 567-2301
Email: tbeline@cassidylevy.com

*Counsel to United States Steel Corporation*